### COUNTY OF PENOBSCOT, ADJOURNED TERM, IN AUGUST, 1836.

---

*Mem. Hon. Albion K. Parris,* after the close of the *July Term* in *Waldo,* and before the commencement of the adjourned *August Term* in *Penobscot,* resigned his office of Justice of the Supreme Judicial Court. No successor was appointed until after the termination of the *August Term.*

---

## BENJAMIN BUSSEY *vs.* HORATIO N. PAGE, *Adm'r.*

B. conveyed to C. certain land, and took his notes with a mortgage of the property, and the parties agreed, that the deeds should remain unrecorded until another survey should be made, and at the same time C. stated to B., that he proposed to sell the land to D., and would transfer the notes and mortgage of D., instead of his own, and B. assented to this arrangement. On the next day C. conveyed the land to D., who recorded his deed without notice of the mortgage to B., giving his notes to C. for the purchase money. After the sale to D. the mortgage from C. to B. was recorded. C. afterwards died intestate and insolvent, and B. brought his bill in equity against the administrator of C., claiming to have the notes of D., then remaining unpaid, assigned to him. *It was held,* that B. was not entitled to a preference above the other creditors, and that the bill should be dismissed.

THIS was a bill in equity brought against the defendant, as administrator of the estate of *Samuel C. Bradbury,* deceased, intestate. The bill stated in substance, that the plaintiff was seised of a tract of land in *Bangor,* and on the 18th of *March,* 1833, bargained and conveyed the same to the defendant's intestate for the consideration of $512,00, and took his notes for $421,25, part thereof, and that a mortgage of the same premises was made to secure the payment of the notes.

That while the deeds were being executed, *Bradbury* said he was dissatisfied with the survey, and proposed to the plaintiff to

keep the deeds unrecorded until a new survey should be made, to which the plaintiff agreed, and kept his mortgage from the registry until *April* 29, 1833, when it was recorded by a mistake of the clerk of the plaintiff's agent. That at the same time, *Bradbury* stated to the plaintiff, that he had agreed to sell the land to one *Bryant*, and requested the plaintiff to take *Bryant's* notes for his own, when *Bradbury* should convey to *Bryant*, on *Bryant's* giving a lien on the land, as security; to which request the plaintiff assented. That on the next day after the conveyance by the plaintiff to *Bradbury*, the land was conveyed to *Bryant* by *Bradbury* at an advance, taking *Bryant's* notes to *Bradbury* which yet remain unpaid, and that *Bryant* recorded his deed on the 23d of the same *March*, the plaintiff having no knowledge of the existence of the deed to *Bryant* until a long time after. That believing that *Bryant* had notice of the mortgage from *Bradbury* to him at the time of the execution of the deed from *Bradbury* to *Bryant*, the plaintiff commenced an action against *Bryant* for the possession under said mortgage, but on the trial a verdict was found in favor of *Bryant* on the ground, that he had no notice of the plaintiff's mortgage, and that judgment has been rendered on that verdict. That *Bradbury* died in *January*, 1834; that the defendant was soon after appointed administrator of his estate, that the estate is deeply insolvent, and that a commission of insolvency has been duly issued upon it. That the plaintiff requested the defendant to assign to him so much of the notes given by *Bryant* to *Bradbury*, as would amount to the purchase money of the same land still due to the plaintiff from *Bradbury*, or to pay over the money to that amount received from *Bryant*, but that he refused, saying that the sums received from *Bryant* should be applied *pro rata* in the payment of the intestate's debts. And the plaintiff charged, that there was fraud in *Bradbury's* conveying the land under the circumstances; that *Bradbury* in his lifetime, and the defendant, as his administrator, held the notes of *Bryant*, given for the same land, in trust for the plaintiff; and prayed for an assignment of so much of *Bryant's* notes, as would pay the amount now due to the plaintiff for the same land.

To this bill the defendant demurred.

*F. H. Allen*, in support of the demurrer, contended:

That the bill shews a case of novel impression; an attempt to obtain in equity in favor of one creditor his debt in exclusion of the others, and from their loss.

1. The promise set forth in the bill is merely a parol one, not to put the deed on record until the survey should be made. The deed was actually delivered, and the notes and mortgage given back, and could not be an escrow. The agreement alleged is void by the statute of frauds both at law and in equity. 9 *Coke*, 137, *Thoroughgood's case; Souverbye* v. *Arden*, 1 *Johns. Ch. R.* 240; 1 *Paige*, 385; *Ward* v. *Lewis*, 4 *Pick.* 518; *Sherburne* v. *Fuller*, 5 *Mass. R.* 133.

2. If there was any fraud practised, all claim from that source is taken away by the death of *Bradbury.* No action for a tort can be supported after the death of him charged with it, unless for some advantage the estate derives in consequence of it. If any right of action existed against the intestate, it cannot be supported against the administrator. *Hambly* v. *Trott*, 1 *Cowper*, 371; *Franklin* v. *Low*, 1 *Johns. R.* 402; *Stebbins* v. *Palmer*, 1 *Pick.* 71; 1 *Saund.* 216, *Wms. Notes;* 2 *William's Ex'ors*, 1060.

3. The estate was rendered insolvent, and by the statute an equal distribution of all the estate is to be made, with certain exceptions within which this does not fall. The only remedy is by filing the claim before the commissioners.

*T. P. Chandler*, for the plaintiff.

*Bradbury's* mortgage conveyed to *Bussey*, as between the parties, the fee in the land; the latter owning the fee, and the former the equity. *Bradbury* conveyed to *Bryant* not only his own interest, but *Bussey's* also. This second sale was a fraud on *Bussey*, the first purchaser. 1 *Story's Eq. sec.* 395, 397; *Ferris* v. *Henderson*, 1 *Edwards Ch. R.* 132; *Dickerson* v. *Tillinghast*, 4 *Paige*, 220. And equity to promote justice will convert *Bradbury* into a trustee for the benefit of the injured party. *Brown* v. *Lynch*, 1 *Paige*, 147; *Haggerty* v. *Palmer*, 6 *Johns. Ch. R.* 437; *Schmidt* v. *Dietericht*, 1 *Edw. Ch. R.* 119; *Livingston* v. *Deane*, 2 *Johns. Ch. R.* 479; 1 *Story's Eq. sec.* 395. On the ground that the proceeds of the sale be-

Bussey *v.* Page.

long to *Bussey*, equity would relieve him on a bill against *Bryant*, he not having paid the purchase money. *Jewett* v. *Palmer*, 7 *Johns. Ch. R.* 65; *Wood* v. *Mann*, 1 *Sumner*, 506.

*Bradbury's* insolvency did not destroy the trust. The administrator holds the notes subject to our equitable lien. *Lyman* v. *Estes*, 1 *Greenl.* 182; *Moses* v. *Murgatroyd*, 1 *Johns. Ch. R.* 119; *Dexter* v. *Stewart*, 7 *Johns. Ch. R.* 52; *Kip* v. *Bank of New-York*, 10 *Johns. R.* 63; *Badger* v. *Phinney*, 15 *Mass. R.* 359; *Lechman* v. *Carlisle*, 3 *P. Wms.* 217; *Kittleby* v. *Atwood*, 1 *Vernon*, 298; *Adair* v. *Shaw*, 1 *Sch. & Lef.* 262; *Brown* v. *Heathcoate*, 1 *Atkins*, 162; *Taylor* v. *Wheeler*, 2 *Vernon*, 564; *Hinton* v. *Hinton*, 2 *Ves.* 633; *Winch* v. *Keeley*, 1 *T. R.* 619; *Carpenter* v. *Marnell*, 3 *Bos. & P.* 40. By our insolvent law the deceased's *estate* only passes to the creditors, and not the property of others entrusted to him; whereas by the bankrupt act of *England* the assignees take not only all the bankrupt's estate, but all the property he has in possession, and of which he is the apparent owner, whether he actually owns it or not; and yet trust property does not pass. *Stat.* 21 *Jac.* 1. *ch.* 19, *sec.* 10, 11; 1 *P. Wms.* 315.

If land mortgaged be sold under a prior incumbrance, the lien of the mortgagee attaches on the surplus proceeds. *Bartlett* v. *Gale*, 4 *Paige*, 504.

After a continuance, *nisi*, the opinion of the Court was drawn up by

WESTON C. J. — The claim of the plaintiff to the relief sought by the bill, depends upon the question, whether the defendant's intestate held the notes of *Bryant* specifically in trust for the plaintiff, and whether the same trust attaches to the notes in the hands of the defendant. For if the plaintiff has no ground of preference over other creditors, arising from such trust, if it exists, his only remedy is by filing his claims before the commissioners, appointed to receive and examine such demands, as might be presented against the estate of the intestate.

It is insisted, that the trust results from a fraud, practised by the intestate upon the plaintiff. Without deciding, how far such a charge can be open to inquiry since his decease, which is at

least questionable, we are not satisfied that it results from the facts set forth in the bill, taking them to be true. The plaintiff sold and conveyed the land, from which this suit has arisen, taking as security for the greater part of the purchase money, the notes of the intestate, with a mortgage on the land. The deeds were delivered, and took effect; as is conceded by the counsel for the plaintiff.

The intestate was dissatisfied with the survey, and proposed a new one, and that the deeds should in the mean time remain un-recorded, to which the plaintiff acceded. It is not charged, that this proposition was made by the intestate in bad faith, as a pretence, upon which to keep the mortgage from being recorded, that he might thereby pass a title to *Bryant*, clear of that incumbrance. For any thing which appears, the intestate was in truth desirous of a new survey; and hoped to derive an advantage from it. It is not charged that he recorded his deed, in violation of his own proposition. If any correction proved to be necessary upon a re-survey, he might intend that new deeds should be substituted, for those already made. And if he conveyed in the mean time, any deed he might receive would enure to the use of his grantee, by way of estoppel.

It appears by the bill, that he did at the time apprize the plaintiff, that he had agreed to sell the land to *Bryant*, and he desired to know, and was informed, that *Bryant's* notes, secured by a mortgage from him, would be acceptable to the plaintiff, instead of his own. It is not charged, that the sale to *Bryant* was agreed to be suspended, or that it was not to be done, without the approbation and consent of the plaintiff, or that he requested or enjoined it upon the defendant, and not to convey without his knowledge.

The contemplated exchange of securities, rested altogether in proposition. It is not charged, that the intestate agreed, that it should be done. *Bryant* was to be consulted; and his consent was necessary to the arrangement. The plaintiff was very confiding. He must have been aware that he hazarded his security, by delaying the registry of his mortgage deed. He avers, that the intestate conveyed without his knowledge or consent. He might not have had a knowledge of the fact, at the time of the

conveyance ; but he certainly knew that the intestate had agreed to make it. It does not appear, that the intestate had anything to gain, by defeating the plaintiff's mortgage. He might reasonably expect in that event, to be more severely pressed for payment.

The plaintiff sets forth no request or demand upon the intestate, to exchange the securities. For anything which appears, the intestate may have been at all times ready to make the exchange. *Bryant* could have had no objection to it. To him, it must have been desirable ; for in that case, when paid, the plaintiff's incumbrance would be extinguished. If not done, he was exposed to that claim, which he escaped only, after the trouble, expense and hazard of a lawsuit. If the exchange had been made, *Bryant* would probably have had no objection to the giving of a mortgage, as collateral security. It does not appear, that he gave any to the intestate, and it may have been omitted, with a view to the contemplated arrangement. There might have been an understanding between *Bryant* and the intestate, that this should be carried into effect. The plaintiff avers, that he believed the intestate apprized *Bryant* of the existence of the mortgage. But he was unable to prove it ; and *Bryant* escaped the incumbrance.

We have taken this view of the case to show, that the bill may be true, without necessarily imputing fraud to the intestate. He deceased in less than a year after these transactions, probably before any of the notes had become due. The plaintiff had confidence in him. We know not that it was not well warranted, from his character. The facts stated in the bill do not afford sufficient evidence, that it was his intention to circumvent the plaintiff. Had he lived, every thing might have been arranged to the satisfaction of all concerned. Mere delay on the part of the intestate, the plaintiff making no movement to hasten him, we cannot regard as evidence, that fraud was meditated.

Upon the whole, it may be deduced from the bill, that the intestate bought land of the plaintiff, having previously agreed to sell it again to *Bryant*, at an advance. That it was his intention, as it was his interest, to exchange the securities with the plaintiff, who consented to receive *Bryant's*, for those of the intestate.

That although this was not positively agreed, the plaintiff had reason, from the proposition of the intestate, to believe that it would be done. That the business was neglected, until the intestate died, when his estate proving insolvent, the arrangement was defeated.

It is not pretended, that the intestate received or held *Bryant's* notes, under any express trust, in favor of the plaintiff. As far as the trust is based upon the charge of fraud, if that ground was now open, we are not satisfied, that it is sustained by the bill. We perceive nothing in the transaction, which can give the claim of the plaintiff a preference over other creditors. It is the policy of the law, in relation to the estates of persons, who have died insolvent, that they should be distributed *pro rata* among the creditors, with certain specific exceptions. And this policy is carried so far, that attachments are dissolved in suits, pending at the decease of the insolvent. Whether trusts, in reference to personal property, express or resulting, are or are not to be excepted from the general operation of the law, we have no occasion to decide in the case before us.

The bill is dismissed, but without costs.